Caldwell, Ch.
There are two questions involved in this case: 1st. Has the Court of Equity jurisdiction? 2d. Is the plaintiff’s claim against the defendant barred by the statute of limitations ? The statements and charges of the bill make a case to which a demurrer could not be sustained, and the evidence is such a chain of circumstances, as establishes the truth of every material allegation. One of the largest classes of cases in which Equity grants relief is where there has been misrepresentation. In Evans v. Brickwell, it was said to be a very old head of Equity, that if a representation is made to another person going to deal in a matter of interest, upon the faith of that representation, the former shall make that representation good, if he knew it to be false; and in Bacon v. Brunson, Chancellor Kent, quoting this case, says, “ there is no dispute about this doctrine; it is a principle of universal law ; fraud and damage coupled together, entitle the injured party to relief in any Court of Justice.”
It is necessary that the misrepresentation should be in a matter of substance important to the interests of the plain *18 tiff, and that the damage should not be indefinite or contin-geutj but result directly frcrm the misrepresentations; but it is not essential that the defendant should derive a benefit from it. The plaintiff’s claim is strengthened by the circum-stances of the unlimited trust and confidence which she reposed in his truth and fidelity; he was employed to invest her money in a good bond, secured by a mortgage of real es-tate’ an<^ ^íe any other agent who is retained to perform cer-£am work for hire, he was bound to exercise the skill and dil-igence proportioned to the employment.
Uuss 1 P tors Brokers, 35.
When a broker is employed to negotiate bills of exchange, he is bound to acquaint himself with all the proceedings which are necessary by law'for the protection of the rights of his principal, and to adopt such proceedings without any unnecessary delay: if employed to procure insurance, he must take care that the underwriters are persons in good credit at the time of the insurance; otherwise, he must bear the loss arising from their insolvency. Had the instructions of the principal been to take a bond with personal sureties, it would have been a matter of discretion, and there might have been a ¿mere error in judgment; but here, there could, be no mistake ■as to the security required, or the certainty of its being sufficient, if the agent had done his duty; the defendant’s course in this negotiation was so plain and palpable, that his neglect becomes so gross, as to amount to fraud, which he has not palliated by showing that he made an inquiry of even one person, whether Hasset was good or not. Even when warned by the apprehensions of plaintiff’s agent, he repelled with contempt, the charge of the bond and mortgage being insufficiently secured, and persisted to the last in assuring the plaintiff that her money was secure. Whether the defendant in misrepresenting the fact of Hasset’s bond and mortgage being ;good, knew it to be false, or whether he made the assertion without knowing whether it was true or false, is immaterial; for the rule of law and morals is identical, that, the affirmation of a fact which one does not know or believe to be true, is equally unjustifiable as the affirmation of what he knows .to be positively false,
There is no rule of law or equity that exonerates a broker from the obligations of due diligence, whether he be considered as the agent of one of the parties or of both. If he be considered as the agent of Hasset, he is supposed to know the encumbrances on the property of his principal, and to speak for him, and ought to be bound by the representations that he made, for it was within his power to withhold the money until Hasset could give him proof of his estate being unincum-bered; but the circumstances indicate that the defendant was well acquainted with Hasset’s condition, and was not dealing with one to whom he was a stranger. It was urged on *19 the part of defendant, that it was not his line of business to make contracts, and it could not be expected that a broker would be competent to investigate titles and take bonds and mortgages. If one undertakes an employment for which he is unfit, and in the execution of the business receives a benefit himself and occasions a loss to his employer, he cannot shelter himself behind his ignorance or incapacity, from the responsibility that, he has assumed, and must be held answerable for the consequences, especially where he had acted mala fide.
garn and 636.
The second question involves two points: — 1st. Had the Court of Law concurrent jurisdiction of this case? 2d. When did the right of action arise'? There are many cases of misrepresentation, of which the Courts of Law and Equity have concurrent jurisdiction. It has been said, that the great case of Pasley v. Freeman, which was tried at law, could have been maintained in Equity, on the ground of fraud and deceit in the defendant and damages to the plaintiff. At common law it is a familiar principle that fraud accompanied with damage is a good cause of action, and the proper remedy is by an action on the case — the plaintiff might therefore have brought her action on the case against the defendant at law— she was not bound to wait until the affairs of Hasset were wound up by his other creditors. This case cannot be put upon the footing of a guaranty, where the remedy against the original obligor is first to be exhausted before suit can be brought against the guarantor — here the misrepresentation deceives the plaintiff, defrauds her of her money and deprives her of the adequate means of recovering it — the injury is therefore complete at once, and needs no future or further contingencies to its consummation.
In Short v. McCarley, the defendant was employed to make a search at the Bank of England, to ascertain whether certain stock was standing m the name of certain persons ; he omitted to search, and although his neglect was not discovered by plaintiff until within six years, the statute of limitations was held a bar.
In Whitehead v. Howard, the defendant, in 1808, promised to invest plaintiff’s money for him on good security by way of annuity; part of the security proposed by defendant consisted of some copyhold premises supposed to belong to one Alston ; the defendant never inspected the rolls of the manor in which the copy-hold was situate; that though in fact Alston possessed uo such copy-hold, the plaintiff’s money was paid over to Alston, who granted an annuity for it, which was paid by the hands of the defendant till 1814, when Alston became bankrupt; that at the time of the transaction, the plaintiff’s two sons were Clerks in defendant’s office, were in some degree consulted by the plaintiff, and might if they had thought fit, have inspected the rolls of the manor; that upon *20 Alston’s bankruptcy and the state of the security being dis-coverey^ Gibbs, the defendant’s managing clerk, promised the should be paid, which promise was afterwards recog-nised and confirmed by the defendant. Defendant pleaded the general issue and statute of limitations; and the Court held that the action could not be sustained, and that the defendant’s liability was barred by the statute of limitation. In Howell v. Young, (which was an action on the case against an attorney for negligence,) the declaration stated that the plaintiff retained the defendant to see if a certain security were good; that he accepted the retainer and neglected his duty, and represented the security to be good; the plaintiff advanced his money and the security was bad — by means of which he lost the interest. It was held that the gist of the action was the negligence, and the statute oflimitations runs from the time of the negligence, and not from the time of the loss of the interest.
3 V. &B. 372.
2Car*|>ayn0
This case cannot be considered as a technical continuing trust, nor as belonging to that class of cases which is exclusively remedial in equity. Her right of action arose from Gadsden’s misrepresentations of the security of the bond and mortgage, and she was not bound to wait until she could recover the one or foreclose the other, before she could prosecute her claim against tho defendant for the deceit, but like all cases of fraud, a right of action arose immediately, to set aside the contract and to recover from the defendant the money of which she had been defrauded. The moment the misrepresentation was discovered and the insecurity of the plaintiff’s bond and mortgage ascertained, the cause of action was complete ; and it would have been competent for her, in a suit at law against the defendant, to have proved the extent of her damages at any time, independently of the proceedings of other creditors of Hasset: if any other rule were adopted, every action on the case, for giving false representations of credit, would have to be preceded by a suit against the insolvent who had been recommended and had received the goods, before suit could be sustained against the responsible party who had committed the fraud.
It is ordered and decreed, that the plea of the statute of limitations be sustained and the bill be dismissed.
The complainant appealed, and insisted that the statute of limitations does not bar her remedy against the defendant: but that he is bound to make good his fraudulent representations : and a decree should accordingly be made.
PetigRü & Lesesne, complainant’s Solicitors.